UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                  Case No. 11-20767

v.                                                Honorable Thomas L. Ludington

TYRONE QUENTIN JOHNSON,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
AND MOTION TO APPOINT COUNSEL AS MOOT**

On October 3, 2012, a jury convicted Defendant Tyrone Quentin Johnson of one count of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute heroin, in violation of § 841(a)(1); one count of distribution of heroin, in violation of § 841(a)(1); one count of use of a communication facility, in violation of § 843(b); and one count of maintaining drug-involved premises, in violation of § 856(a)(1). ECF No. 42. He was sentenced to consecutive terms of 270 months for Counts I through III, 96 months for Count IV, and 240 months for Count V. ECF No. 58. He is currently housed at Federal Correctional Institution, Fairton ("FCI Fairton") in Fairton, New Jersey.

On July 27, 2020, Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 98. After receiving an extension, the Government responded on October 7, 2020. ECF No. 102. On October 28, 2020, Defendant moved for an extension of time to file his reply brief. ECF No. 107. He also filed a motion requesting the appointment of counsel to aid in his reply. ECF No. 109. Defendant's Motion for an Extension was granted, and his reply brief was finally filed on December 8, 2020. ECF No. 112. For the reasons stated below, Defendant's Motion for Compassionate Release and Motion to Appoint Counsel will be denied.

**I.**

The United States is facing an unprecedented challenge with the novel coronavirus ("COVID-19") pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9. "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). To prove exhaustion, Defendant attached a copy of an "Inmate Request to Staff" dated May 20, 2020 and purportedly sent to Warden White. ECF No. 98 at PageID.1019. The document seeks compassionate release on the basis of Defendant's ailing mother and his fear of contracting COVID-19 again. *Id.* However, the document bears no indication that it was actually sent to or received by the warden. *Id.* Indeed, the Government denies that Defendant ever sent the request, stating that "[a]ccording to the Case Management Coordinator at FCI Fairton who also serves as the Coordinator for all reduction in sentence requests at the facility, the Warden . . . has not received a request from

Johnson for a reduction in sentence." ECF No. 102 at PageID.1044. The Government, however, offers no evidence in support of this assertion. As a result, whether Defendant successfully exhausted his claim remains a question of fact. Accordingly, this Court will assume that Defendant has exhausted his administrative remedies because, as explained below, his Motion for Compassionate Release should nonetheless be denied.

### B.

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate relesae on his own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 2020 WL 6817488 at *7. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See id.* at *2 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 2020 WL 6817488 at *2 n.6); *United States v. White*, No. 18-20183,

2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 2020 WL 6817488 at *2 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 2021 WL 50169, at *3. Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at *4.

Defendant, a 41-year-old male, first claims that his "extraordinary rehabilitation" and the COVID-19 pandemic constitute extraordinary and compelling reasons for relief. ECF No. 98 at PageID.1016. This Court is unaware of any authority indicating that an inmate's "extraordinary rehabilitation" would constitute an extraordinary and compelling reason for relief. Similarly, "the mere existence of COVID-19 in society" does not entitle an inmate to compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant next claims that he previously contracted COVID-19 and continues to suffer symptoms such as shortness of breath, pain on "both sides," "continuous headaches," and "anxiety issues." ECF No. 112 at PageID.1354. Defendant's medical records confirm that he tested positive

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 2021 WL 50169, at *4 n.1.

for COVID-19 in early June 2019.[2] ECF No. 105 at PageID.1250. But they also belie the suggestion that he continues to suffer from symptoms. For example, during a follow-up visit on June 17, 2020, Defendant denied experiencing any COVID-19 symptoms. *Id.* Similarly, during a routine check-up on August 14, 2020, Defendant reported "feeling well" and the treating physician stated that the "[p]hysical examination [was] unremarkable." *Id.* at PageID.1242–47.

While a previous COVID-19 infection does not preclude compassionate release, *Jones*, 2020 WL 6817488, at *2 n.6, Defendant's medical records disclose no underlying condition that would put him at a higher risk of suffering complications from reinfection. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/9H9M-7YL6] (last visited January 14, 2021) (listing medical conditions that pose increased risk for COVID-19 complications). Accordingly, the record is devoid of any indication that Defendant is at a higher risk of developing complications from COVID-19 or that he continues to suffer COVID-19 symptoms.

Based on the foregoing, Defendant has not demonstrated an extraordinary and compelling reason for release.[3] Consequently, this Court declines to consider whether the § 3553 factors would warrant a sentence reduction. *See United States v. Elias*, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021). Defendant's Motion for Compassionate Release will be denied.

---

[2] As mentioned previously, Defendant noted his fear of reinfection when he originally requested compassionate release from the warden. *See* ECF No. 98 at PageID.1022. The fact that he was diagnosed with COVID-19 in June supports the inference that his request to the warden must have been sent—if at all—sometime after the purported date of May 20, 2020.

[3] It bears noting that FCI Fairton is currently experiencing a rather significant outbreak, with 77 active cases among inmates and 23 among staff. *COVID-19*, Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/W5XZ-FU2Z] (last visited January 14, 2021). Nonetheless, given the lack of any underlying risk factor, Defendant's predicament appears no more extraordinary or compelling than any other inmate at FCI Fairton.

- 7 -

## II.

Defendant's Motion to Appoint Counsel will also be denied. Defendant asks for the appointment of counsel solely to aid him in preparing a reply brief. ECF No. 109. Because Defendant already filed a reply brief, ECF No. 112, and the Motion for Compassionate Release will be denied, Defendant's Motion to Appoint counsel is moot and will be denied as such.

## III.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 98, is **DENIED**.

It is further **ORDERED** that Defendant's Motion to Appoint Counsel, ECF No. 109, is **DENIED AS MOOT**.


Dated: January 22, 2021                                s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge


---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Tyrone Quentin Johnson** #46589-039, FAIRTON FEDERAL CORRECTIONAL INSTITUTION, Inmate Mail/Parcels, P.O. BOX 420, FAIRTON, NJ 08320 by first class U.S. mail on January 22, 2021.

                                    s/Kelly Winslow
                                    KELLY WINSLOW, Case Manager